1

The Honorable James L. Robart

2

3

4

5

6

7          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
8                  AT SEATTLE

9   LACEY MARKETPLACE ASSOCIATES II,
    LLC, a Washington limited liability company,
10                                                    No. 2:13-cv-00383-JLR
                            Plaintiff,
11                                                    DEFENDANT SPORTSMAN'S
         v.                                           WAREHOUSE, INC.'S MOTION FOR
12                                                    SUMMARY JUDGMENT OR, IN THE
    UNITED FARMERS OF ALBERTA                         ALTERNATIVE, PARTIAL SUMMARY
13  COOPERATIVE LIMITED, et al.,                      JUDGMENT

14                          Defendants.

15
    BURLINGTON RETAIL, LLC, a Washington             NOTE ON MOTION CALENDAR:
16  limited liability company,                        December 19, 2014

17                          Plaintiff,

18       v.                                           NO. 2:13-cv-00384-JLR

19  UNITED FARMERS OF ALBERTA
    COOPERATIVE LIMITED, et al.,
20
                            Defendants.
21

22

23

24

25

26

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT
Case No. 2:13-cv-00383-JLR

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON  99201-0302
PHONE (509) 777-1600   FAX (509) 777-1616

51411395.1

# TABLE OF CONTENTS

*Page*

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................3

    A.      Wholesale Assumes Sportsman's Leases ................................................3

    B.      Alamo Pursues a Transaction with UFA and Wholesale and Then Brings in Sportsman's ...............................................................................4

    C.      February 10, 2013 Master Transaction Agreement ("MTA") ....................4

    D.      Burlington and Lacey File Lawsuits Before the Closing Date ...................5

    E.      Sportsman's is Added as a Defendant Nearly One Year Later....................6

III.    THE LANDLORDS' HEIGHTENED BURDEN ON SUMMARY JUDGMENT ...........7

IV.     SPORTSMAN'S IS ENTITLED TO SUMMARY JUDGMENT ON THE LANDLORDS' FRAUDULENT TRANSFER CLAIMS.................................8

    A.      The Landlords Have Failed to Demonstrate Actual Intent to Defraud Under RCW 19.40.041 ...........................................................................8

    B.      Sportsman's Paid Reasonably Equivalent Value in Good Faith for Wholesale's Assets, Which is a Complete Defense to the Actual Fraud Claim.................................................................................................10

    C.      The Landlords Have Failed to Demonstrate a Constructive Fraudulent Transfer Under RCW 19.40.041(a)(2) and RCW 19.40.051 ...................12

V.      THE LANDLORDS DO NOT HAVE A VALID CLAIM FOR INTENTIONAL INTERFERENCE AGAINST SPORTSMAN'S.........................12

VI.     PARTIAL SUMMARY JUDGMENT SHOULD BE ENTERED ON CERTAIN OF LANDLORDS' DAMAGES CLAIMS ...........................14

VII.    THERE IS NO BASIS FOR AWARDING ATTORNEYS' FEES AGAINST SPORTSMAN'S ................................................................17

VIII.   CONCLUSION.......................................................................................18

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – i
Case No. 2:13-cv-00383-JLR

51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................7

*Blueberry Place Homeowners Ass'n v. Northward Homes, Inc.*,
  126 Wn.App. 352, 110 P.3d 1145 (2005) ..............................................................17

*Burke & Thomas, Inc. v. Int'l Org. of Masters, Mates & Pilots, W. Coast & Pac.
  Region, Inland Div., Branch 6*,
  21 Wn. App. 313, 585 P.2d 152 (1978) .................................................................13

*C.D. Stimson v. Porter*,
  195 F.2d 410 (10th Cir. 1952) ...............................................................................16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................7

*Clearwater v. Skyline Const. Co., Inc.*,
  67 Wash.App. 305, 835 P.2d 257 (1992) .................................................................7

*Credit Managers Ass'n of Southern California v. The Federal Company*,
  629 F. Supp. 175 (C.D. Cal. 1985) ........................................................................11

*Devereaux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001) .................................................................................7

*Eugster v. City of Spokane*,
  121 Wn. App. 799, 91 P.3d 117 (2004) .................................................................12

*Family Med. Bldg., Inc. v. Dep't of Soc. & Health Servs.*,
  104 Wn.2d 105, 702 P.2d 459 (1985) ....................................................................15

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*,
  86 Wn. App. 732, 935 P.2d 628 (1997) .................................................................14

*Gremp v. Ramsey*,
  2009 WL 112674 (W.D. Wash. Jan. 14, 2009) ........................................................8

*Kreidler v. Cascade Nat. Ins. Co.*,
  179 Wash.App. 851, 321 P.3d 281 (2014) .............................................................12

*Leingang v. Pierce Cnty. Med. Bureau, Inc.*,
  131 Wn. 2d 133, 930 P.2d 288 (1997) ...................................................................13

*McKasson v. Johnson*,
  178 Wn. App. 422 (2013) ......................................................................................17

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – ii
Case No. 2:13-cv-00383-JLR

51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON  99201-0302
PHONE (509) 777-1600   FAX (509) 777-1616

*Page(s)*

*New Market Acquisitions, Ltd. v. Powerhouse Gym*,
212 F. Supp. 2d 763 (S.D. Ohio 2002) ...................................................16

*Pleas v. City of Seattle*,
112 Wn. 2d 794, 774 P.2d 1158 (1989) ...............................................14

*Simar Shipping Ltd. v. Global Fishing, Inc.*,
2012 WL 72287 (W.D. Wash. Jan. 10, 2012) ........................................8

*Sparkman & McLean Co. v. Derber*,
4 Wash.App. 341, 481 P.2d 585 (1971) ...............................................11

*Tamosaitis v. Bechtel Nat., Inc.*,
327 P.3d 1309 (2014) .............................................................................12

*United States v. Standard Oil Co. of California*,
603 F.2d 100 (9th Cir. 1979) ................................................................17

*Wenatchee Sportsmen Ass'n v. Chelan County*,
141 Wash.2d 169, 4 P.3d 123 (2000) ...................................................12

*Worthington v. Low Cost Drugs, Inc.*,
2000 Wash.App. LEXIS 255, 2000 WL 199004 (Feb. 15, 2000) (unpublished) ...................17

**STATUTES**

RCW 19.40.041 .................................................................................7, 8, 10

RCW 19.40.041(a)(2) ..............................................................................12

RCW 19.40.041(b)(1)-(11) ........................................................................8

RCW 19.40.051 .......................................................................................7, 12

RCW 19.40.051(a) ...................................................................................12

RCW 19.40.081 .......................................................................................11

RCW 19.40.081(a) ...................................................................................10

Uniform Fraudulent Transfer Act ............................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c)(2) ...........................................................................7

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – iii
Case No. 2:13-cv-00383-JLR

51411395.1

**FOSTER PEPPER PLLC**
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

# I.       INTRODUCTION

Defendant Sportsman's Warehouse, Inc. paid $47 million to defendant Wholesale Sports USA, Inc. pursuant to a February 10, 2013 Master Transaction Agreement ("MTA").  In exchange, Sportsman's received all the inventory and fixtures in fifteen stores that Wholesale had operated in the United States, as well as the leaseholds for ten stores that Wholesale had operated.  Sportsman's had no interest in acquiring the leaseholds for five of the fifteen Wholesale stores, which were therefore excluded from the assets that Sportsman's acquired. Instead, and in a separate transaction that was also memorialized in the MTA, Defendant Alamo acquired the stock of Wholesale, which retained the five leaseholds.

Two of the stores Sportsman's did not acquire are owned by plaintiffs, Lacey Marketplace Associates II LLC, and Burlington Retail LLC (collectively, the "Landlords").  The Landlords opposed the transaction because they did not want Alamo and its owner Don Gaube in control of their leases.  They filed their lawsuits against UFA, Wholesale and Alamo on March 4, 2013, before the transaction even closed.

Nearly a year after filing their initial complaints, the Landlords filed an amended consolidated complaint that added Sportsman's as a defendant.  Asserting claims for fraudulent transfer and intentional interference, the Landlords contend that the MTA transaction was a "sham."  The substantial evidence of drawn-out and hard-fought negotiations among all the parties to the MTA, however, reveals that the MTA and the transactions contemplated by it were the furthest thing from a "sham."  The undisputed facts require summary judgment in favor of Sportsman's.

The Landlords have a heavy burden to prove a fraudulent transfer:  "clear and satisfactory" proof is required for a claim of an actual fraudulent transfer and "substantial evidence" is required for a claim of a constructive fraudulent transfer.   The Landlords cannot meet these burdens.  There is no dispute that Sportsman's paid $47 Million to Wholesale, which left Wholesale with funds sufficient to pay off a $25.6 million inventory loan and to distribute

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 1
Case No. 2:13-cv-00383-JLR

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON  99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

51411395.1

1   almost $16 million to its parent, defendant United Farmers of Alberta Cooperative.   Nor have

2   the Landlords come forward with any evidence that Sportsman's paid less than reasonably

3   equivalent value for the acquired assets.  In fact, Sportsman's acquired Wholesale's inventory at

4   historical cost and the evidence indicates that, if anything, Sportsman's **overpaid** for the

5   inventory.  Quite simply, Landlords have utterly failed on their burden to prove that

6   Sportsman's acquisition of Wholesale's assets constituted a fraudulent transfer.  Indeed,

7   Sportsman's good faith and payment of reasonably equivalent value provide a complete defense

8   to the Landlords' fraudulent transfer claim.

9        The intentional interference claim against Sportsman's fares no better.  It is a

10   fundamental principle of Washington law that an intentional interference claim cannot stand

11   against a party that is operating in the normal course of business, especially when doing so

12   pursuant to rights under a contract.  Here, Sportsman's acquired inventory and fixtures from

13   Wholesale pursuant to a valid contract.  Notably, neither the Burlington nor Lacey lease barred

14   Wholesale from selling all or substantially all of its assets.  Consequently, there is no basis for

15   asserting that Sportsman's asset purchase caused, intentionally or otherwise, a breach of either

16   lease.  In fact, Sportsman's even paid money to Alamo to pay rents to the Landlords, but Alamo

17   apparently used those funds for obligations related to another store.  But whether the rents were

18   paid or not, the evidence is undisputed: far from trying to interfere with the Wholesale's leadse

19   obligations, Sportsman's took steps to **enable** the rents to be paid.  The undisputed facts

20   demonstrate that Sportsman's did not have an "improper purpose," and did not use "improper

21   means," as required for the Landlords' intentional interference claim to proceed.

22        Sportsman's is entitled to summary judgment on both of the causes of action alleged

23   against it.  In the alternative, however, Sportsman's moves for partial summary judgment against

24   certain of the Landlords' damages claims, and against any claim by the Landlords that they are

25   entitled to attorneys' fees against Sportsman's.  The Landlords seek millions of dollars in

26   construction costs and tenant allowances that are not compensable damages because the

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 2
Case No. 2:13-cv-00383-JLR
51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON  99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

undisputed facts establish that they either are capital improvements or incentives that will be captured through future rents.  Additionally, the Burlington lease expressly limits that landlord's remedy upon termination of the lease for failure to pay rent to real estate commissions.  Finally, there is no contract between the Landlords and Sportsman's that could justify an award of attorneys' fees against Sportsman's, nor is there any statute that the Landlords could rely upon to justify such an award. Accordingly, partial summary judgment should be entered barring any award of attorneys' fees against Sportsman's.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Wholesale Assumes Sportsman's Leases

Sportsman's retail stores sell hunting, shooting, fishing and camping gear.  In 2007, Sportsman's was struggling financially and Seidler Equity Partners, a private equity investor, purchased preferred stock in the company for approximately $50 million. (Ex. 23 (C. Eastland Dep. (I) at 15:15-16:11).)[1]  Despite that injection of capital, the company continued to struggle. In 2008 Wholesale loaned money to Sportsman's.  In return, Sportsman's assigned the leaseholds to a number of its stores to Wholesale as collateral for the loan.  (Doc. No. 73 (Am. Compl. ¶ 13).)  The collateral assignments—which were approved by Lacey and Burlington— provided that Wholesale would take over the leaseholds if Sportsman's failed to make payments on the loan.  (*Id.*)

In March 2009, Sportsman's defaulted on the Wholesale loan.  Wholesale took over the stores subject to the collateral assignments, including the Burlington and Lacey stores.  (*Id.* ¶ 14.)  In the same month, Sportsman's filed for bankruptcy.  Sportsman's subsequently emerged from bankruptcy in August 2009, with Seidler beneficially owning all of Sportsman's outstanding common stock.  (Ex. 23 (C. Eastland Depo. (I) at 16:21-17:11).)

---

[1] "Ex." refers to the exhibits attached to the concurrently filed declaration of John R. Nelson.

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 3
Case No. 2:13-cv-00383-JLR
51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON  99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

**B.    Alamo Pursues a Transaction with UFA and Wholesale and Then Brings in Sportsman's**

Alamo is a real estate investment company that specializes in creating solutions for retail properties that are distressed or underperforming.  Typically, Alamo acquires the underlying real estate.  (Ex. 27 (D. Gaube Depo. at 223:15-224:10).)  Then, through re-development and acquisition of quality tenants, Alamo makes its money by adding value to the retail center.  (*Id.*)

In March 2012, Alamo approached UFA about a transaction involving Wholesale's American and Canadian stores, but the discussions did not progress in any meaningful way.  (Ex. 25 (P. Melnychuk Depo. (I) at 78:1-10).)  Later that year, Alamo contacted Seidler to see if Sportsman's had any interest in pursuing a combined acquisition of Wholesale's 15 U.S. stores.  (Ex. 6.)  Although Sportsman's had an interest in the inventory, fixtures and leases for certain of Wholesale's stores, it told Alamo that it had no interest in taking over several of the stores, including the stores at the Burlington and Lacey properties.  (Ex. 7.)  As Chris Eastland— Sportsman's current Chairman—testified, the lack of interest was due to the stores' locations and lackluster historical performance.  (Ex. 23 (C. Eastland Depo. (I) at 28:2-17).)

**C.    February 10, 2013 Master Transaction Agreement ("MTA")**

Sportsman's, Alamo, Wholesale and UFA executed the MTA on February 10, 2013.  The MTA provided that the "Closing Date" of the agreement would be March 11, 2013.  (Ex. 1 at UFA000378.)  Under the MTA, Sportsman's agreed to pay Wholesale a total "Asset Purchase Price" of $53,000,000 (*id.* at UFA000401, § 2.1(b)(i)).  That amount covered $43,000,000 for the "Target Inventory Amount" (*id.,* UFA000397), plus an additional $10,000,000 for the rest of the "Purchased Assets" – personal property, the assumed leases, goodwill and  intellectual property, etc. (*Id.,* UFA000396).  The inventory was purchased at UFA's actual historic acquisition cost. (*Id.* at UFA000388 (defining "Actual Inventory Amount"; Ex. 24 (C. Eastland Depo. (II) at 327:3-19 (Sportsman's paid Wholesale's actual historical cost for inventory).)  The final asset purchase price was subject to adjustment to reflect differences between the Target Inventory

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 4
Case No. 2:13-cv-00383-JLR

51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON  99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

1   Amount, $43,000,000, and the actual inventory at closing.  *Id.*, UFA000402-405, §2.1(f)).  In

2   addition, Sportsman's agreed to assume the lease liability for ten of Wholesale's stores.  (Ex. 1 at

3   UFA000388, 466.)  After all adjustments, Sportsman's paid Wholesale $47,005,805 for the

4   acquired assets; $38,100,000 for inventory less assumed liabilities and the balance for the other

5   assets.  (Ex. 8; Ex. 14, UFA007169 (showing allocation of proceeds).)  In a separate transaction

6   memorialized in the MTA, Alamo agreed to acquire the stock of Wholesale for one dollar;

7   Wholesale retained the leaseholds for five stores, including the Burlington and Lacey stores.[2]

8   (Ex. 1 at UFA000407, 472.)

9           **D.      Burlington and Lacey File Lawsuits Before the Closing Date**

10          As Mr. Gaube testified, he intended to make money on the transaction by negotiating

11  with the landlords, potentially acquiring one or more of the properties, and finding quality anchor

12  tenants.  (Ex. 27 (D. Gaube Depo. at 59:4-60:2; 290:8-291:8.)  To get that process started, UFA

13  sent notices to the landlords at all of its stores, including Burlington and Lacey, on February 12,

14  2013.  The notices announced the transaction and indicated that representatives of Alamo would

15  be contacting them.  (Ex. 9.)

16          Alamo initiated discussions with representatives of the companies that hold ownership

17  interests in Burlington and Lacey, including Mack Dubose and Michael Hess, who are also

18  principals of the company that owns the Coeur d'Alene store.  (Ex. 28 (M. Hess Depo. at 175:5-

19  176:18; Ex. 10.)  Gaube made some progress, but was hospitalized in mid-February.  (Ex. 27

20  (D. Gaube Depo. at 213:25-214:9).)  In the meantime, Burlington and Lacey began threatening

21  litigation, claiming that the MTA was a "sham" and that UFA was liable on the leases as a

22  guarantor.  (Ex. 11.)

23          On March 4, 2013, the Landlords and the owner of the Coeur d'Alene store filed lawsuits

24  in the Western District of Washington.  The lawsuits did not include Sportsman's as a defendant,

25

26  _____

[2] The other three stores were in Coeur d'Alene, Idaho, Fargo, North Dakota, and Spokane, Washington.  (Ex. 1 at UFA000472.)

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 5
Case No. 2:13-cv-00383-JLR

51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON  99201-0302
PHONE (509) 777-1600   FAX (509) 777-1616

but alleged claims against UFA, Wholesale, Alamo and Gaube for, among other things, breach of lease, misrepresentation and intentional interference with respect to the leases at the Burlington, Lacey and Coeur d'Alene stores.  At the same time, Gaube began negotiating with Sportsman's and UFA to amend the MTA so that he would receive funds to cover rent obligations while he worked out a resolution with the landlords.  (Exs. 12, 15.)  Sportsman's and UFA agreed, and on March 11, 2013, the parties signed a First Amendment to the MTA.  The Amendment required UFA and Sportsman's to each pay Alamo $214,747.50, approximating six months' rent for the Lacey store.  (*See* Ex. 2.)  In addition, Sportsman's and Alamo executed a March 11, 2013 Side Letter Agreement in which Sportsman's agreed to pay to Alamo $249,544.28, representing two months' rent for the Burlington and Coeur d'Alene stores.  (*See* Ex. 3.)

Gaube continued his efforts to resolve the leases with the landlords.  In fact, by April 3, 2013, Gaube achieved a resolution with respect to the Coeur d'Alene store and that lawsuit was terminated.  (Ex. 27 (Gaube Depo. at 23:20-24:4).)  In addition, Gaube engaged in discussions with Dubose and Hess about a purchase of the Burlington store.  (Ex. 29 (Dubose Depo. at 169:6-170:7.) As for Lacey, Gaube was unable to make progress, at least in part because one member of the ownership group, Robert Andrews, was hostile toward Gaube and told them they should tell "Don to stick it – sideways."  (Ex. 13; Ex. 31 (R. Andrews Depo. at 133:18-134:9).)  Despite funds received pursuant to the Amendment and Side Letter Agreement, Alamo caused Wholesale to stop paying rent on the Burlington store in July 2013 and on the Lacey store in May 2013, apparently because Alamo used the funds to satisfy obligations related to the Spokane store.  (Ex. 30 (C. Crippen Depo. at 24:12-25); Ex. 27 (Gaube Depo. at 75:20-76:9).)

### E.    Sportsman's is Added as a Defendant Nearly One Year Later

On February 28, 2014, almost a full year after filing their lawsuits, the Landlords filed a consolidated amended complaint.  This pleading contained largely the same allegations as the initial complaints, but added Sportsman's as a defendant on claims for intentional interference with contract and violation of the Uniform Fraudulent Transfer Act ("UFTA"). (Doc. No. 73.)

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 6
Case No. 2:13-cv-00383-JLR

51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

1  During discovery the parties have exchanged nearly 100,000 pages of documents and have taken

2  seventeen fact and expert witness depositions.  This discovery has demonstrated what was true

3  from the start: Sportsman's entered into the MTA for a good faith and legitimate business

4  purpose and paid reasonably equivalent value for the assets it received.

5  **III.    THE LANDLORDS' HEIGHTENED BURDEN ON SUMMARY JUDGMENT**

6          Summary judgment for a defendant is appropriate when the plaintiff fails to make a

7  showing sufficient to establish the existence of an element essential to that party's case and on

8  which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317,

9  322 (1986).  For its motion, Sportsman's has an initial burden of production and the ultimate

10  burden to persuade the court that there is "no genuine issue as to any material fact and that the

11  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  Sportsman's may

12  carry its burden by showing that there is an absence of evidence supporting the Landlords'

13  claims.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

14          The Landlords face a heightened burden of proof on their fraudulent transfer claims.

15  Under Washington law, proof of actual intent to defraud under RCW 19.40.041 must be

16  demonstrated by clear and satisfactory proof, while proof of a constructive fraudulent transfer

17  under RCW 19.40.051 must be demonstrated by substantial evidence.  *Clearwater v. Skyline*

18  *Const. Co., Inc.*, 67 Wash.App. 305, 321, 835 P.2d 257 (1992).  Sportsman's motion may be

19  granted based on a lack of evidence sufficient to meet this heightened standard.  *Anderson v.*

20  *Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) (no "genuine issue" exists where the evidence

21  presented in opposing affidavits is "of insufficient caliber or quantity to allow a rational finder of

22  fact to find actual malice by clear and convincing evidence.").

23

24

25

26

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 7
Case No. 2:13-cv-00383-JLR
51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

**IV.   SPORTSMAN'S IS ENTITLED TO SUMMARY JUDGMENT ON THE LANDLORDS' FRAUDULENT TRANSFER CLAIMS**

**A.   The Landlords Have Failed to Demonstrate Actual Intent to Defraud Under RCW 19.40.041**

"A transfer is fraudulent if the debtor acted '[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor' or transferred an asset '[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation.'" *Simar Shipping Ltd. v. Global Fishing, Inc.*, 2012 WL 72287, at *1 (W.D. Wash. Jan. 10, 2012) (quoting RCW 19.40.041(a)). To determine whether a transfer is fraudulent, there are eleven statutory indicia referred to as "badges of fraud." *See id.*; *see also Gremp v. Ramsey*, 2009 WL 112674, at *4 (W.D. Wash. Jan. 14, 2009). These "badges" include determinations as to whether the:

- Transfer was to an insider;
- Debtor retained control of the property after the transfer;
- Transfer was disclosed or concealed;
- Debtor was involved in litigation at the time of the transfer;
- Transfer consisted of substantially all of the debtor's assets;
- Debtor was insolvent as a result of the transfer, or became insolvent shortly thereafter;
- Debtor absconded after the transfer;
- Debtor concealed assets;
- Debtor received reasonably equivalent value for the transfer;
- Transfer occurred shortly before or after a substantial debt was incurred by the debtor; and/or
- Assets were transferred to a lienor who transferred the assets to an insider of the debtor.

RCW 19.40.041(b)(1)-(11). These standards focus on the conduct of the debtor, rather than the transferee. *Gremp*, 2009 WL 112674, at *5. Application of the undisputed facts to these

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 8
Case No. 2:13-cv-00383-JLR
51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

1    factors—keeping in mind that the Landlords must establish Wholesale's actual intent to defraud

2    with clear and substantial evidence—makes clear that summary judgment is warranted with

3    respect to the Landlords' claim of an actual fraudulent transfer.

4         It is undisputed that Sportsman's paid Wholesale $47 million for the historical cost of its

5    inventory and its other assets.  (*See* Ex. 8; Ex. 1 at UFA000388; Ex. 24 (C. Eastland Depo. (II) at

6    327:3-19).)  As Mr. Eastland testified, UFA was insistent on basing the inventory portion of the

7    purchase price on historical cost, even though Sportsman's ended up selling much of the

8    inventory for prices that were at or below the amounts it paid to Wholesale.  (Ex. 24 (C. Eastland

9    Depo. (II) at 324:15-327:2, 327:3-19).)  Internal UFA documents indicate that Sportsman's paid

10   $38.1 million for inventory, and over $47 million total.  (Ex. 14 at 3.)  The Landlords and their

11   damages expert have admitted in deposition that they have no evidence that Sportsman's did not

12   pay reasonably equivalent value for Wholesale's assets.  (Ex. 29 (M. Dubose Depo. at 230:11-

13   231:10); Ex. 31 (R. Andrews Depo. at 138:4-140:2); Ex. 33 (L. Barrick Expert Depo. at 31:25-

14   32:20).)

15        Sportsman's payment of $47 million to Wholesale left that company with substantial

16   funds; Wholesale was therefore anything but insolvent after Sportsman's purchased its assets.  In

17   fact, the evidence demonstrates that Wholesale was enriched by the transaction with

18   Sportsman's, which allowed Wholesale to pay off a $25.6 million inventory loan.  (Ex. 14 at 3;

19   Ex. 26 (P. Melnychuk Depo. (II) at 268:8-12; *id.* at 246:24-247:4); Ex. 32 (Nelson Depo. at

20   140:8-16); Ex. 33 (Barrick Expert Depo. at 25:16-26:13, 29:13-30:1.  The Landlords' own

21   expert, Lorraine Barrick, confirmed that Wholesale received the money from Sportsman's, paid

22   off the inventory loan, and then distributed $15,065,192 to UFA.  (Ex. 21 at 21.)  That Wholesale

23   distributed the money it received from Sportsman's in a separate transaction does not change the

24   bona fides of Sportsman's acquisition of Wholesale's assets.

25        Additionally, the Landlords have produced no evidence that Sportsman's acquisition was

26   a transfer to an insider, that Wholesale retained control over the assets transferred to

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 9
Case No. 2:13-cv-00383-JLR

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

Sportsman's, that Wholesale "absconded" after the transfer, that Wholesale incurred a substantial debt before or after the transfer, that any assets were "concealed," or that the transfer was to a lien holder.  Further, the undisputed facts establish that—far from being a secret transaction—the MTA was fully disclosed to the Landlords.  (Ex. 9.)  All of these factors therefore weigh in Sportsman's favor.

The only factors that the Landlords are able to prove is that Wholesale sold substantially all of its assets and that litigation was pending at the time of the transfer.  Those two factors carry no serious weight.  The pending litigation was filed by the Landlords before there was any default under the leases.  In summary, the Landlords have failed to meet their burden to establish by clear and satisfactory evidence that Wholesale sold its assets to Sportsman's with an actual intent to hinder creditors, or for less than reasonably equivalent value.  The Court should grant summary judgment in favor of Sportsman's on the Landlords' claim under RCW 19.40.041.

**B.  Sportsman's Paid Reasonably Equivalent Value in Good Faith for Wholesale's Assets, Which is a Complete Defense to the Actual Fraud Claim**

Even if the Court were to assume *arguendo* that *Wholesale* sold its assets to Sportsman's with an intent to hinder or defraud the Landlords, the transaction cannot be set aside against Sportsman's because it took in good faith and for a reasonably equivalent value.  *See* RCW 19.40.081(a).  As discussed above, the Landlords cannot seriously dispute that Sportsman's gave reasonably equivalent value when it paid Wholesale $47 million for its assets.

As for good faith, the evidence is overwhelming.  The deposition testimony and documents show that Sportsman's was an unrelated party pursuing its own legitimate business interests.  UFA sought to divest its Wholesale business operations in the United States. (Ex. 25 (P. Melnychuk Depo. (I) at 129:5-16; Ex. 26 (P. Melnychuk Depo. (II) at 109:5-110:9)).  Sportsman's desired to expand its market share through the acquisition of inventory and store space. (Ex. 24 C. Eastland Depo. (II) at 329:17-21)  Sportsman's acquisition of Wholesale's assets did not violate any lease term, and left Wholesale with significant cash.

In opposition, the Landlords will no doubt present to this Court email exchanges between the parties—some of them rather salty and containing expletives—in an attempt to suggest that the "sound bites" indicate a "sham" transaction.  (*See, e.g.*, Exs. 11, 12, and 16.)  What those emails demonstrate, however, is that Sportsman's, UFA, and Alamo did just what unrelated, third parties do in a business transaction:  negotiate to get the best possible deal for their respective interests.  *See Credit Managers Ass'n of Southern California v. The Federal Company*, 629 F. Supp. 175, 188 (C.D. Cal. 1985) (fact that transaction was the "result of arms length negotiations" weighed against finding a fraudulent transfer had taken place).

Moreover, Sportsman's good faith is demonstrated by the steps that it took to provide Wholesale with the ability—following the transfer of that company's stock to Alamo—to pay rent and other obligations while Alamo continued to engage in discussions with the Landlords. (*See* Exs. 2, 3.)  While Alamo did, in fact, cause Wholesale to discontinue rent payments, that does not change the fact that Sportsman's provided Wholesale with the ability to fulfill its rent obligations and fully expected that Wholesale would do so.  (Ex. 29 (M. Dubose Depo. at 242:11-16 (no evidence that Sportsman's did not expect Alamo to pay rents); Ex. 23 (C. Eastland Depo. (I) at 175:7-25 (Sportsman's expected Wholesale would continue to pay rents).)   The undisputed evidence establishes that Sportsman's, on all fronts, acted with "[a]n honest belief in the propriety of the activities in question," did not have any "intent to take unconscionable advantage of others, and did not "inten[d] to" and did not have "knowledge of the fact that the activities in question [would], hinder, delay, or defraud others."  *See Sparkman & McLean Co. v. Derber*, 4 Wash.App. 341, 348, 481 P.2d 585 (1971) (citing *Tacoma Association of Credit Men v. Lester*, 72 Wash.2d 453, 433 P.2d 901 (1967)).

Substantial evidence demonstrates that Sportsman's acquired assets from Wholesale for reasonably equivalent value and in good faith. Summary judgment on the Landlords' fraudulent transfer claims is therefore warranted under RCW 19.40.081.

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 11
Case No. 2:13-cv-00383-JLR

51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

**C.    The Landlords Have Failed to Demonstrate a Constructive Fraudulent Transfer Under RCW 19.40.041(a)(2) and RCW 19.40.051**

The Landlords allege that Sportsman's acquisition of Wholesale's assets was a constructive fraudulent transfer.  This claim also fails.  Constructive fraudulent transfers are covered in RCW 19.40.041(a)(2) and RCW 19.40.051(a), and both require proof by "substantial evidence"[3] that Wholesale transferred its assets to Sportsman's for less than reasonably equivalent value.  *See  Kreidler v. Cascade Nat. Ins. Co.*, 179 Wash.App. 851, 862-63, 321 P.3d 281 (2014) ("As part of proving a constructive fraud claim . . . the Trustee must demonstrate that Midwest did not receive reasonably equivalent value from Cascade.").  As discussed above, there is no evidence that Sportsman's did not pay reasonably equivalent value to Wholesale for the assets it transferred.  The Landlords' claim of a constructive fraudulent transfer therefore fails and summary judgment in favor of Sportsman's should be granted.

**V.    THE LANDLORDS DO NOT HAVE A VALID CLAIM FOR INTENTIONAL INTERFERENCE AGAINST SPORTSMAN'S**

The Landlords bear the burden of establishing each of the five essential elements of tortious interference:

> (1) the existence of a valid contractual relationship; (2) knowledge of and intentional interference with that relationship; (3) a breach or termination of that relationship induced or caused by the interference; (4) an improper purpose or the use of improper means by the defendant that caused the interference; and (5) damages.

*Tamosaitis v. Bechtel Nat., Inc.*, 327 P.3d 1309, 1313 (2014); *Eugster v. City of Spokane*, 121 Wn. App. 799, 811, 91 P.3d 117 (2004)).  The evidence demonstrates that the Landlords have failed to establish one or more of these elements against Sportsman's.

The Landlords cannot genuinely claim that Sportsman's purchase of Wholesale's inventory and fixtures caused a breach of their leases.  As the Landlords confirmed in deposition testimony, (Ex. 29 Dubose Depo. at 226:21-228:7, 232:18-234:20),  neither the Burlington nor

---

[3] "Substantial evidence" requires a "sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true."  *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wash.2d 169, 176, 4 P.3d 123 (2000).

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 12
Case No. 2:13-cv-00383-JLR
51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON  99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

1   the Lacey lease bars the tenant from entering into a sale of all or substantially all of its assets.

2   (See Exs. 5.)  In fact, the Lacey lease explicitly provides that a "sale of substantially all of

3   Tenant's assets" is excluded from the category of "assignments" that would require Lacey's

4   consent.  (Ex. 5 at 21 (¶ 24).)  Sportsman's legitimate interest in acquiring inventory, fixtures and

5   store space completely undermines any claim that it "interfered" with the leases.  *Leingang v.*

6   *Pierce Cnty. Med. Bureau, Inc.*, 131 Wn. 2d 133, 157, 930 P.2d 288 (1997) (stating that, where a

7   party exercises "in good faith one's legal interests," there is no improper interference, even if it

8   unintentionally causes harm to the plaintiff).

9       The Landlords are thus left with a theory that Sportsman's intentionally "caused"

10  Wholesale to breach the leases by not paying rent.  *Burke & Thomas, Inc. v. Int'l Org. of*

11  *Masters, Mates & Pilots, W. Coast & Pac. Region, Inland Div., Branch 6*, 21 Wn. App. 313,

12  316, 585 P.2d 152 (1978) ("The essential thing is the purpose to cause the result. If the actor

13  does not have this purpose, his conduct does not subject him to liability … [even] if it has the

14  unintended effect of [interfering in another's contract].").  There is not a shred of evidence that

15  Sportsman's did anything that could be construed as an intentional effort to cause discontinuance

16  of rent payments to Burlington and Lacey.  In deposition, the Landlords' representatives

17  repeatedly testified that they were unaware of any evidence that Sportsman's did anything to

18  cause a breach of the leases.  (Ex. 28 (M. Hess Depo. at 205:6-206:21 (explanation of "sham"

19  has nothing to do with Sportsman's role in transaction); *id.* at 227:3-11, 228:3-229:16, 230:10-15

20  (no specific evidence against Sportsman's); Ex. 31 (R. Andrews Depo. at 146:5-149:10 (not

21  aware of any obligation on Sportsman's part); Ex. 29 (Dubose Depo. at 239:20-241:2 (no

22  evidence Sportsman's did anything to cause breach of lease); *id.* at 242:11-16 (no evidence that

23  Sportsman's did not expect Alamo to cause Wholesale to pay rents).)

24      Setting aside the lack of any evidence indicating intentional conduct by Sportsman's to

25  cause a breach of the leases, the Landlords have also failed to establish that Sportsman's acted

26  with an "improper purpose" or used "improper means."  Washington courts decline to infer an

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 13
Case No. 2:13-cv-00383-JLR

51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

improper purpose when parties are operating in the normal course of business, especially when they are doing so pursuant to rights under a contract.  In this case, Sportsman's had every right to enter into an agreement to acquire Wholesale's assets and had every right to decline to take on the obligations of leases for stores it did not want.  *See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 935 P.2d 628 (1997) (no intentional interference where party acted in accordance with valid contract).  Further, there is absolutely no basis in the evidence for finding that Sportsman's used any "improper means," which generally requires a violation of a "statute or other regulation, or a recognized rule of common law, or an established standard of trade or profession."  *Pleas v. City of Seattle*, 112 Wn. 2d 794, 804, 774 P.2d 1158 (1989).

The evidence demonstrates a complete failure of proof on the Landlords' claims for intentional interference.  Accordingly, summary judgment on that claim in favor of Sportsman's should be granted.

## VI.   PARTIAL SUMMARY JUDGMENT SHOULD BE ENTERED ON CERTAIN OF LANDLORDS' DAMAGES CLAIMS

As discussed above, there is no evidence supporting liability as to Sportsman's and summary judgment should be entered in its favor.  Should the Court deny summary judgment as to either cause of action against Sportsman's, however, it should nonetheless enter partial summary judgment on certain improper damages that the Landlords are seeking in this action.

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 14
Case No. 2:13-cv-00383-JLR
51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON  99201-0302
PHONE (509) 777-1600   FAX (509) 777-1616

According to an expert report submitted by the Landlords, they will seek the following damages:[4]

|  | Burlington | Lacey |
|---|---|---|
| Lost Rent | $1,530,370 | $1,333,892 |
| Prejudgment Interest on Lost Rent | 80,542 | 99,102 |
| Costs of "Re-Leasing" | 5,121,646 | 3,683,851 |
| Prejudgment Interest on Costs of "Re-Leasing" | 99,399 | 46,205 |
| Total | $ 6,831,957 | $ 5,163,050 |

The Landlords have obtained replacement tenants and will begin receiving rent in January 2015 at Burlington, and February 2015 at Lacey. The "re-leasing" costs claimed by the Landlords are the result of each Landlord demising the former Wholesale stores into two stores. Thus, most of the "re-leasing" costs are actually construction costs and tenant improvements to effect the split of each store into two leaseholds ($4,818,436 for Burlington and $2,132,084 for Lacey). (*See* Ex. 21 at 38-59 (Exhibits 3 and 4 to L. Barrick report).)

To prevail on a claim for expenses associated with tenant improvements, the Landlords must prove that those costs were necessary expenses of mitigation, not capital improvements for the benefit of a replacement tenant. *See Family Med. Bldg., Inc. v. Dep't of Soc. & Health Servs.*, 104 Wn.2d 105, 114, 702 P.2d 459 (1985) (citing *Pioneer Trust & Savings Bank v. Zonta*, 96 Ill.App.3d 339, 421 N.E.2d 239, 245 (1981)). The Landlords' costs are not mitigation for several reasons. First, Mack Dubose admitted that tenant improvements would have been required one way or the other at the end of the terms of the Wholesale leases. (Ex. 29 (M. Dubose Depo. at 245:10-246:11).) Michael Hess admitted that it would be "almost impossible" to do a lease in the current market without a landlord providing tenant improvements. (Ex. 28 (M. Hess Depo. 28:3-22).) Consequently, the expenses would have been incurred at the end of the lease terms even absent Wholesale's breach. Further, Mack Dubose admitted that the

---

[4] The report of the Landlords' damages expert Lorraine Barrick is included in the Nelson Declaration as Exhibit 21.

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 15
Case No. 2:13-cv-00383-JLR
51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

construction costs would be amortized over the life of the lease, thus establishing that the improvements accrue to the Landlords' long-term benefit.  (Ex. 29 (M. Dubose Depo. at 205:10-24).)  Multiple documents demonstrate that the Landlords will recapture their "re-leasing" costs through rents over the life of the lease.  (Exs. 17, 18, 19, and 20.)  Finally, the Landlords' own narrative "leasing history" states that the proposed rent from a new tenant at Burlington will allow them to cover operating expenses and recapture tenant improvement costs over the course of the lease.  (Ex. 22 (R. Hoefer Report, Ex. H).)  In short, the Landlords' own evidence demonstrates that much of their claimed damages for "re-leasing" are not damages at all. *See C.D. Stimson v. Porter*, 195 F.2d 410, 414 (10th Cir. 1952) (costs of dividing premises into two rental units were not recoverable as mitigation costs because they "redounded" to the lessor).

In addition to construction costs, the "re-leasing" costs also include $110,840 and $1,341,427 in "tenant improvement allowances" for Burlington and Lacey, respectively.  (*See* Ex. 21 at 38, 49 (Exhibits 3 and 4 to L. Barrick report).)  Tenant improvement allowances, however, are not recoverable mitigation damages because they are recovered by a landlord over the life of the lease.  *See New Market Acquisitions, Ltd. v. Powerhouse Gym*, 212 F. Supp. 2d 763 (S.D. Ohio 2002) (finding that costs incurred to remodel and expand a space to accommodate a replacement tenant were unrecoverable as mitigation costs because they were capital improvements).  Indeed, the evidence above shows that the Landlords factored allowances into their rental rates, just as they did with tenant improvement costs.

Even aside from the common law obstacle to the Landlords' "releasing cost" damages claims, the Burlington lease expressly *excludes* nearly all of Burlington's claimed damages from the Landlord's remedies upon default.  Specifically, Section 22.2 of the Burlington lease prescribes the "Remedies for Material Default or Breach by Tenant," and allows Burlington to reenter, take possession of, and relet the premises (as it did).  Section 22.2.1, however, provides that "[t]he parties hereby specifically confirm that Reletting Costs will *only include the*

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 16
Case No. 2:13-cv-00383-JLR
51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

1    *brokerage fees or commissions* described in the first sentence of this Section 22.2.1 *and no*

2    *other costs will be so included in Reletting Costs*."  (Exhibit 5 at 20 (emphasis added).)

3          There is no ambiguity in the language of Section 22.2.1.  The Burlington lease

4    specifically excludes from damages for default any re-leasing costs other than brokerage fees or

5    commissions.  When a contract's terms are "plain and unambiguous," Washington courts

6    interpret the terms according to their plain language.  *McKasson v. Johnson*, 178 Wn. App. 422

7    (2013).  Nor does Burlington's effort to refer to the claimed damages as "re-leasing" as opposed

8    to "re-letting" costs change the plain meaning of the lease.  As their own damages expert

9    admitted, there is no reasonable basis for concluding that "re-leasing" costs are different than

10   "reletting costs."  (Ex. 33 (L. Barrick Depo. at 14:22-15:10).)

11         Partial summary judgment should be granted barring the Landlords from seeking

12   damages for re-leasing costs that are tenant improvement costs and tenant allowances.

13   **VII.    THERE IS NO BASIS FOR AWARDING ATTORNEYS' FEES AGAINST
         SPORTSMAN'S**

14

15         The Landlords' third prayer for relief requests an award of attorneys' fees against all

16   Defendants.  Washington follows the "traditional rule" — absent a contract, statute or recognized

17   ground of equity, attorneys' fees will not be awarded as part of the cost of litigation.  *Blueberry*

18   *Place Homeowners Ass'n v. Northward Homes, Inc.*, 126 Wn.App. 352, 358, 110 P.3d 1145,

19   1149 (2005), citing *Pennsylvania Life Ins. Co. v. Dep't of Employment Sec.*, 97 Wash.2d 412,

20   413, 645 P.2d 693 (1982); *accord*, *United States v. Standard Oil Co. of California*, 603 F.2d

21   100, 103 (9th Cir. 1979).  The Landlords' UFTA and tortious interference claims against

22   Sportsman's do not fit within any exception to the rule.  *Worthington v. Low Cost Drugs, Inc.*,

23   2000 Wash.App. LEXIS 255, at *18, 2000 WL 199004 (Feb. 15, 2000) (unpublished) ("Fees are

24   not awarded for actions based on UFTA violations.").  Nor do the Landlords allege that any

25   contract exists between them and Sportsman's.  Sportsman's is entitled to partial summary

26   judgment barring any award of attorneys' fees against it.

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 17
Case No. 2:13-cv-00383-JLR

51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616

1

## VIII.   CONCLUSION

2          For all of the foregoing reasons, Sportsman's respectfully requests entry of summary

3  judgment against the Landlords' claims for fraudulent transfer and intentional interference with

4  contract. In the alternative, Sportsman's respectfully requests that this Court grant partial

5  summary judgment in favor of Sportsman's against Landlords' claims for tenant improvement

6  costs as damages, and against any claim for an award of attorneys' fees against Sportsman's.

7          DATED this 25th day of November, 2014.

8                                                FOSTER PEPPER PLLC

9

10                                               *s/John Ray Nelson*
                                                 John Ray Nelson, WSBA #16393
11                                               Attorney for Defendant
                                                 Sportsman's Warehouse, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 18
Case No. 2:13-cv-00383-JLR

51411395.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25th, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

| | |
|---|---|
| Roger J. Kindley | kindley@ryanlaw.com |
| Britenae M. C. Pierce | pierce@ryanlaw.com |
| Matthew F. Pierce | mpierce@gordontilden.com |
| Jeffrey I. Tilden | jtilden@gordontilden.com |
| Christina Haring-Larson | Christina@slindenelson.com |
| Darian A. Stanford | darian@slindenelson.com |
| Daniel H. Lerner | Daniel@slindenelson.com |
| Sage Andrew Linn | sage@impactlawgroup.com |

DATED this 25th day of November, 2014.

*s/Pam McCain*
Pam McCain
Legal Assistant

SPORTSMAN'S WAREHOUSE, INC.'S MOTION
FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – 19
Case No. 2:13-cv-00383-JLR

51411395.1

FOSTER PEPPER PLLC
422 W. RIVERSIDE, SUITE 1310
SPOKANE, WASHINGTON 99201-0302
PHONE (509) 777-1600  FAX (509) 777-1616