The Honorable James L. Robart

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| LACEY MARKETPLACE ASSOCIATES II, LLC, a Washington limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED FARMERS OF ALBERTA COOPERATIVE LIMITED, et al.,<br><br>　　　　　Defendants. | NO. 2:13-cv-00383-JLR<br><br>DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b)<br><br>NOTE ON MOTION CALENDAR: APRIL 3, 2015 |
| BURLINGTON RETAIL, LLC, a Washington limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED FARMERS OF ALBERTA COOPERATIVE LIMITED, et al.,<br><br>　　　　　Defendants. | NO. 2:13-cv-00384-JLR |

DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 1
NO. 2:13-cv-00383-JLR

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
(206) 447-4400

## I.  INTRODUCTION AND REQUEST FOR RELIEF

Sportsman's Warehouse, Inc. ("Sportsman's"), by and through its undersigned counsel, respectfully moves the Court to enter judgment against Defendant United Farmers of Alberta Co-Operative Limited ("UFA") on the Jury's Special Verdict Form regarding Plaintiffs' claims for fraudulent transfer, and not against Sportsman's.

Under Washington's Uniform Fraudulent Transfer Act ("UFTA"), RCW 19.40.081(b)(1) invests the Court with discretion in equity to enter judgment against (1) the first transferee of the asset, *or* (2) the person for whose benefit the transfer was made.  The Court should exercise its discretion and enter judgment against UFA, rather than Sportsman's, because the evidence at trial was clear that UFA directed the use of—and directly benefitted from—the fair value purchase money Sportsman's paid to Wholesale.

Sportsman's relies upon the following undisputed facts to support this motion: (a) Sportsman's paid $47,000,000 for the assets of Wholesale Sports USA ("Wholesale");  (b) there was no evidence that $47,000,000 was not a "reasonably equivalent value" for the assets Sportsman's purchased from Wholesale;  (c) UFA's Chief Executive Officer Peter Melnychuk and its Director of Finance Denys Vuch both testified unequivocally that Sportsman's paid the $47,000,000 directly to a bank account owned by Wholesale -- and that testimony was corroborated by Exhibits A-239 and A-240, contemporary UFA documentary evidence listing the account to which Sportsman's funds were wired as a Wholesale account; and (d) Melnychuk and Vuch also testified that Sportsman's purchase money was transferred from Wholesale's bank account and used to pay Wholesale's and UFA's debt.

The Court previously held that "the only transaction relevant to the question of Sportsman's liability for a fraudulent transfer is Sportsman's purchase of Wholesale's inventory and assets—not, as Plaintiffs argue, Alamo's purchase of Wholesale's stock or Wholesale's transfer of the purchase money to UFA."  Dkt. # 149, Order on Motions for Partial Summary Judgment, p. 10:17-20.  Notwithstanding that holding, Plaintiffs' counsel repeatedly invited the jury to consider the transactions together, rather than independently. However, the Court has discretion to remedy the prejudice invited by that conduct by directing entry of the Judgment on Plaintiffs' fraudulent transfer claims against the

DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 2
NO. 2:13-cv-00383-JLR

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
(206) 447-4400

beneficiary of Sportsman's fair value purchase money, rather than Sportsman's.  The Court should exercise its authority under RCW 19.40.081(b)(1) and enter judgment on Plaintiffs' fraudulent transfer claims against UFA, rather than Sportsman's, because Sportsman's funds were used to pay Wholesale's and UFA's debt.

The overriding purpose of the Uniform Fraudulent Transfer Act is to provide relief to creditors whose collection on a debt is frustrated by the actions of a debtor to place the putatively satisfying assets beyond the reach of the creditor.  To the extent there were any such "actions of the debtor" in this action, they occurred *after* Sportsman's Warehouse paid Wholesale fair value for Wholesale's assets, and they happened at the direction of UFA.  In exercising its discretion to enter judgment on Plaintiffs' fraudulent transfer claims under RCW 19.40.081(b)(1), and consistent with the principles of equity that should guide that discretion, the Court should direct entry of judgment on Plaintiffs' fraudulent transfer claims against UFA, not Sportsman's .[1]

## II.  FACTS

A.    Sportsman's paid $47,000,000 to Wholesale Sports USA.

Peter Melnychuk, UFA's Chief Executive Officer,[2] testified unequivocally that Sportsman's paid the $47,000,000 asset purchase price to a Wholesale bank account.[3]  Denys

---

[1] Sportsman's brings this motion for entry of judgment on the Jury's Special Verdict under RCW 19.40.081(b), and without prejudice to move for a Judgment as a Matter of Law and/or a new trial under Fed. R. Civ. P 50(b) and 59, if needed.

[2] Melnychuk Trial Testimony, 3/4/15 Transcript, p. 60:19-22, attached as Ex. 1 to Nelson Decl.

[3] Melnychuk Trial Testimony, 3/4/15 Transcript, p. 88:8-17, attached as Ex.1 to Nelson Decl.  Mr. Melnychuk was questioned regarding Ex. 5, the "Tex Mex Funds Flow Schedule":

> Q And the first block, $45-and-a-half million dollars, is transferred from Sportsman's to United Farmers of Alberta Co-Operative, Limited?
> A That is actually -- if you look at [UFA] Holdings, it actually is a Wholesale Sports account.
> Q Well, it's a reference, [UFA] Holdings. The reference might be real estate transactions. But the account name, the owner of the account was United Farmers of Alberta Co-Operative Limited, was it not?
> A It was actually a Wholesale Sports account.

DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 3
NO. 2:13-cv-00383-JLR

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
(206) 447-4400

Vuch, UFA's Director of Finance,[4] confirmed this fact.[5] Testifying with regard to Exhibit A-239, Mr. Vuch explained that Account No. 6106 -- to which Sportsman's funds were wired -- is a Wholesale account.[6] Finally, Mr. Vuch identified and testified regarding Exhibit A-240, the contemporaneous email he received in anticipation of the transaction closing, which includes Account # 6106 on an attached list of "Wholesale USA Accounts":

> Q Mr. Vuch, based on your knowledge as director of finance and your view of the documents that we have looked at today, can you tell the jury conclusively where the proceeds from the sale of Wholesale Sports' assets went in the initial transfer?
> A They went to Wholesale Sports U.S.A.[7]

   B.   <u>The excess "free cash" proceeds of Sportsman's purchase funds were applied to pay down $16,000,000 of UFA's debt.</u>

Mr. Melnychuk and Mr. Vuch also made clear that the $47,000,000 Sportsman's paid to Wholesale was applied to pay Wholesale's inventory debt, an intercompany loan from UFA, and $16,000,000 of UFA's debt incurred during the initial acquisition of Wholesale. Mr. Melnychuk testified:

> Q The ABL -- you've got net proceeds of $45.9 million, right?
> A Well, the proceeds were $46 million. 100 percent of those funds went to our lenders. $25 -- or $25.6 million of that went to pay off the specific debt associated to the financing of the inventory of Wholesale Sports U.S., $4 million went to an intercompany loan between UFA and Wholesale Sports, and the rest stayed with the lenders to pay off the debt that was raised to initially buy Wholesale Sports U.S.
> Q Exactly. That was the debt of UFA and not of Wholesale Sports?
> A It all went to the lender and the debt was associated, though, to the purchase of Wholesale Sports.[8]

---

[4] Vuch Trial Testimony, 3/6/15 Transcript, p. 23:13-17, attached as Ex. 2 to Nelson Decl.

[5] Vuch Trial Testimony, 3/6/15 Transcript, pp. 23:18-25, attached as Ex. 2 to Nelson Decl.; Ex. A-239 attached as Ex. 5 to Nelson Decl.

[6] Mr. Vuch also explained that Ex. 5, the "Funds Flow Schedule" upon which Plaintiffs relied, incorrectly listed the name of the account as United Farmers of Alberta. Vuch Trial Testimony, 3/6/15 Transcript, p., p. 29:3-21, attached as Ex. 2 to Nelson Decl..

[7] Vuch Trial Testimony, 3/6/15 Transcript, p. 31:12-16, attached as Ex. 2 to Nelson Decl.

DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 4
NO. 2:13-cv-00383-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
(206) 447-4400

\*\*\*

> Q And UFA in Canada, at the conclusion of the transaction in 2013, used net cash generated to pay off its own loan on the purchase. Right?
> A That's correct.[9]

\*\*\*

> Q. So at the end of the day, you took the last $20 million and paid off UFA debt, $16 million of it owed to lenders for UFA's initial acquisition?
> A That's correct.[10]

Mr. Vuch, UFA's Director of Finance, confirmed Mr. Melnychuk's testimony on this fact:

> Q Can you explain what happened to the money after it was paid to Wholesale Sports U.S.?
> A Yes. As part of a preexisting loan agreement that United Farmers of Alberta had, those funds were transferred directly to UFA's lender.[11]

### III. DISCUSSION

Fed. R. Civ. P. 58(b)(2)(A) requires the Court's direction to the Clerk and approval of the form of a judgment entered on a jury's Special Verdict. In this action, the Court should direct the Clerk to enter judgment on the Special Verdict regarding Plaintiffs' fraudulent transfer claims against UFA, not Sportsman's Warehouse.

A. <u>The Court has discretion under RCW 19.40.081(b) to direct entry of the judgment on Plaintiffs' fraudulent transfer claims solely against UFA as the beneficiary of the Wholesale asset sale.</u>

RCW 19.40.071 sets forth the remedies available to a creditor in an action under the UFTA. Those remedies are expressly made "subject to the limitations in RCW 19.40.081." RCW 19.40.071(a). As relevant here, RCW 19.40.081 provides:

---

[8] Melnychuk Trial Testimony, 3/4/15 Transcript, p. 95:4-16, attached as Ex. 1 to Nelson Decl.

[9] Melnychuk Trial Testimony, 3/4/15 Transcript, p. 96:5-8, attached as Ex.1 to Nelson Decl.

[10] Melnychuk Trial Testimony, 3/4/15 Transcript, p. 142:20-23, attached as Ex. 1 to Nelson Decl.; *see also id.* p.151:21-23 (same).

[11] Vuch Trial Testimony, 3/6/15 Transcript, pp. 23:18-24:4, attached as Ex. 2 to Nelson Decl.

DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 5
NO. 2:13-cv-00383-JLR

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
(206) 447-4400

>   (b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under RCW 19.40.071(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. *The judgment <u>may</u> be entered against*:
>
>>   (1) *The first transferee of the asset <u>or</u> the person for whose benefit the transfer was made;* or
>>   (2) *Any subsequent transferee other than a good-faith transferee or obligee who took for value or from any subsequent transferee or obligee.*

The Court must interpret this statute "to carry out the legislature's intent." *Tesoro Ref. & Mktg. Co. v. State, Dep't of Revenue*, 164 Wn.2d 310, 317 190 P.3d 28 (2008) (quoting *Burns v. City of Seattle*, 161 Wn.2d 129, 164, 164 P.3d 475 (2007)).  In doing so, "[t]he court must give words in a statute their plain and ordinary meaning unless a contrary intent is evidenced in the statute." *Erection Co. v. Dep't of Labor & Indus. of State of Wash.*, 121 Wn. 2d 513, 518, 852 P.2d 288 (1993).

  1. <u>"May" means the Court has discretion to direct entry of judgment on the Special Verdict</u>.

Applying the rules of statutory construction and the plain and ordinary meaning of the words used, the statute clearly grants the Court discretion to direct entry of a judgment on the jury's Special Verdict.  The statute provides that "the judgment *may* be entered."  The word "may" in a statute denotes discretion and is distinct from the word "shall," which indicates a mandatory action. *Pierce v. Yakima County,* 161 Wash.App. 791, 800–01, 251 P.3d 270 (2011).  *Accord, Meridian Place, LLC v. Haughney,* 2013 WL 4501449, *6-7, 176 Wash.App. 1006 (Div.II Aug. 20, 2013) (use of the term "may" indicates that trial court has discretion to enter judgment against transferee or beneficiary of transfer); *Renda v. Nevarez,* 223 Cal.App.4th 1231, 167 Cal.Rptr.3d 874 (2014) (court has discretion in entering judgment on a fraudulent transfer); *In re Marriage of Kim,* 179 Wash.App. 232, 250-251, 317 P.3d 555, 565 (2014) *(*the word "may" in RCW 26.09.184(3) granted the court discretion); *Cummings v. Budget Tank Removal & Environmental Services, LLC*, 163 Wash.App. 379, 384-385, 260 P.3d 220, 224 - 225 (2011) (use of word "may" in Uniform Arbitration Act gave court

| | |
|---|---|
| DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 6<br>NO. 2:13-cv-00383-JLR | **FOSTER PEPPER PLLC**<br>1111 THIRD AVENUE, SUITE 3400<br>SEATTLE, WA 98101<br>(206) 447-4400 |

discretion whether to order consolidation of separate proceedings); *In re Marriage of T*, 68 Wash.App. 329, 334, 842 P.2d 1010, 1012 (1993) (statute stating that Court "may" order fees to be paid by parties left matter to discretion of the Court); *Seattle Times Co. v. Benton County*, 99 Wash.2d 251, 261, 661 P.2d 964, 970 (1983) (statute stating that the Court "may" permit inspection of juvenile records indicates legislative intent to make trial court's decision discretionary).

    2. <u>"Or" means one or the other</u>.

While the word "may" grants the Court discretion in directing entry of the judgment, the statute's use of the word "*or*" limits that discretion.  "The word "or" is a function word indicating alternatives."  *Affordable Cabs, Inc. v. Department of Employment*, 124 Wash.App. 361, 369, 101 P.3d 440, 444 (2004), *citing In re Marriage of Caven,* 136 Wash.2d 800, 808, 966 P.2d 1247 (1998) (grammatically, the word "or" is "a coordinating particle signifying an alternative").  *Accord Tesoro Refining and Marketing Co. v. State, Dept. of Revenue*, 164 Wash.2d 310, 319, 190 P.3d 28, 33 (2008) (as a default rule, the word "or" does not mean "and" unless legislative intent clearly indicates to the contrary); *In re Pac.-Atl. Trading Co.*, 64 F.3d 1292, 1302 (9th Cir. 1995) ("[i]n construing a statute, a court should interpret subsections written in the disjunctive as setting out separate and distinct alternatives").  Consequently, the Court has discretion to enter judgment on a fraudulent transfer against the transferee of the debtor's asset, or against the beneficiary of the transfer, but not both.

In exercising its discretion to direct entry of judgment in this case, the Court should consider principles of law and equity.[12]  *Meridian Place, LLC v. Haughney,* 2013 WL 4501449, *6-7, 176 Wash.App. 1006 (Div.2 Aug. 20, 2013).  In *Meridian*, the Washington Court of Appeals affirmed the trial court's decision to enter judgment only against the parties who benefitted from the transfer, rather than the first transferee, noting that "RCW 19.40.081(b) expressly authorizes the trial court to look beyond the parties' labels and to enter judgment against 'the person for whose benefit the transfer was made.'" *Id.* at 7.  In this case, equity and common sense require that the Court should direct entry of judgment on Plaintiffs'

---

[12] RCW 19.40.902.

DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 7
NO. 2:13-cv-00383-JLR

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
(206) 447-4400

fraudulent transfer claims against UFA, the entity that used the proceeds of the asset sale to pay down its own debt, rather than Sportsman's, which undisputedly paid a reasonably equivalent value for those assets.

### 3. Sportsman's Warehouse was not a "beneficiary" of the Wholesale/UFA transfer of purchase proceeds.

Case law does not support Plaintiffs' argument that Sportsman's was the "party for whose benefit the transfer was made."

> The traditional examples of the 'entity for whose benefit such transfer was made' are a debtor of the transferee or the guarantor of a debt owed by the bankrupt party [debtor] to the transferee." *See, e.g., In re Columbia Data Prods., Inc.*, 892 F.2d 26, 29 (4th Cir. 1989).  In both cases, the transfer of an asset from the bankrupt party to the transferee extinguishes the liability of the 'entity for whose benefit such transfer was made.'  Thus, we have described that entity as "'someone who receives the benefit but not the money.'" *Id.* (*quoting Bonded Fin. Servs., Inc. v. Europena Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988)).

*In re Meredith, CPA*, 527 F.3d 372, 375 (4th Cir. 2008); *accord, In re Railworks Corp*, 760 F.3d 398, 403 (4th Cir. 2014) ("[t]he entity for whose benefit the transfer was made cannot be a subsequent transferee of the property, but rather 'is a guarantor or debtor- someone who receives the benefit but not the money").

Thus, UFA is clearly a beneficiary of the Wholesale asset sale, because the proceeds of that sale were used to pay $16,000,00 of UFA's debt.  Plaintiffs' closing argument that Sportsman's can be held liable because of some general "benefit" in the fair value purchase of Wholesale's assets is not supported by case law.  *In re Brooke Corp.*, 488 B.R. 459, 469 (D. Kan. Bankr. 2013) (refusing to order disgorgement based on alleged indirect benefit as secondary result of transfers to other parties).  To the extent Sportsman's realized *any* benefit from the transaction as a whole, by virtue of an advantage to its business plan or competitive position, that is not a benefit that was "transferred" to it by Wholesale, and it is not a benefit that would have been available in Wholesale to pay Plaintiffs' rent.

### 4. Plaintiffs improperly invited the jury to hold both UFA and Sportsman's liable for Wholesale's transfer to UFA's creditors.

DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 8
NO. 2:13-cv-00383-JLR

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
(206) 447-4400

While it is not directly relevant to this motion, the Court in its discretion may also wish to consider the manner in which Plaintiffs argued for Sportsman's liability in this action. In closing, Plaintiffs' counsel directly and deliberately combined and conflated the asset purchase for which Sportsman's paid $47,000,000 with the ultimate disposition of Wholesale's funds, improperly inviting the jury to hold Sportsman's liable as a "beneficiary" of the distribution made to UFA's creditors:

> The question is not whether a defendant gave a reasonably-equivalent value, it's not whether Sportsman's paid $47 million, but whether the debtor received a reasonably equivalent value. And Sportsman's knew when it signed the Master Transaction Agreement, that its lawyers, O'Melveny and Myers, held the pen on, that the money was going to Canada and was not going to remain in Wholesale Sports. Where a debtor has made a fraudulent transfer, a creditor may recover judgment against the first transferee of the asset or the person for whose benefit the transfer was made. A transferee is a party that receives a transferred asset. I know it's legal jargon. The transferee of the $16 million was UFA in Canada. That's who got it. But the transaction was for the benefit of everybody who participated in it. They all helped write it. They all signed it. They all wanted it to go through. And we have sued them all as a result of this behavior. It was for the benefit of all of them.[13]

Thus, counsel purposefully invited the jury to hold Sportsman's liable as a "beneficiary" of the $16,000,000 transfer from Wholesale to UFA's creditors. This argument directly contravened the Court's Summary Judgment Order. Dkt. #149, pp. 10:15-11:2 ("the only transaction relevant to the question of Sportsman's liability for a fraudulent transfer is Sportsman's purchase of Wholesale's inventory and assets—not, as Plaintiffs argue, Alamo's purchase of Wholesale's stock *or Wholesale's transfer of the purchase money to UFA*") (emphasis supplied). . The argument also invited the jury to violate the Court's Instruction No. 29 ("You must consider each transfer separately to determine if it meets one of the four circumstances"). Finally, the argument plainly suggested that the jury could hold *both* UFA and Sportsman's liable for the transfer from Wholesale Sports, contrary to the plain language

---

[13] 3/6/15 Trial Transcript, pp. 147:14-148:11, attached as Ex. 3 to Nelson Decl..

DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 9
NO. 2:13-cv-00383-JLR

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
(206) 447-4400

of §.081(b)(1).[14]  Sportsman's respectfully submits that these facts also weigh against entry of a judgment against Sportsman's on Plaintiffs' fraudulent transfer claim.

## IV.  CONCLUSION

The Court previously dismissed Plaintiffs' tortious interference claim against Sportsman's Warehouse.  The evidence at trial proved that Sportsman's paid $47,000,000 to Wholesale for its inventory and related assets, and even Plaintiffs admitted that the purchase price was a reasonably equivalent value.   Because the evidence also disproved Plaintiffs' initial contention that Wholesale did not "receive" Sportsman's funds, Plaintiffs encouraged the jury to find Sportsman's liable as the "beneficiary" of the transaction as a whole.  That argument contravened the Court's summary judgment order and instructions, and distorted the plain language of RCW 19.40.081(b)(1).  Fortunately, RCW 19.40.081(b) grants the Court discretion to enter judgment solely against UFA, the actual beneficiary of Wholesale's transfer.  The Court should exercise that discretion and direct the Clerk to enter a judgment on Plaintiffs' fraudulent transfer claim against UFA, rather than Sportsman's Warehouse.

DATED this 16th day of March 2015.

*s/ John R. Nelson*
John Ray Nelson, WSBA No. 16393
FOSTER PEPPER PLLC
422 W. Riverside Ave., Suite 1310
Spokane, WA  99201

---

[14] Sportsman's objected to this argument on this precise basis and requested a clarifying instruction at trial.  3/6/15 Trial Transcript, pp. 164:19-167:1, attached as Ex. 3 to Nelson Decl.

DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 10
NO. 2:13-cv-00383-JLR

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
(206) 447-4400

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

| | |
|---|---|
| Roger J. Kindley | kindley@ryanlaw.com |
| Britenae M. C. Pierce | pierce@ryanlaw.com |
| Matthew F. Pierce | mpierce@gordontilden.com |
| Jeffrey I. Tilden | jtilden@gordontilden.com |
| Christina Haring-Larson | Christina@slindenelson.com |
| Darian A. Stanford | darian@slindenelson.com |
| Daniel H. Lerner | Daniel@slindenelson.com |
| Sage Andrew Linn | sage@impactlawgroup.com |

DATED this 16th day of March, 2015.

*s/Pam McCain*
Pam McCain
Paralegal

DEFENDANT SPORTSMAN'S WAREHOUSE, INC.'S MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS UNDER RCW 19.40.081(b) – 11
NO. 2:13-cv-00383-JLR

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
(206) 447-4400