UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LACEY MARKETPLACE ASSOCIATES II, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED FARMERS OF ALBERTA COOPERATIVE LTD, et al.,<br><br>Defendants. | CASE NO. C13-0383JLR<br><br>ORDER ON MOTION FOR ENTRY OF JUDGMENT |
| BURLINGTON RETAIL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED FARMERS OF ALBERTA COOPERATIVE LTD, et al.,<br><br>Defendants. | CASE NO. C13-0384JLR |

//

ORDER- 1

## I. INTRODUCTION

Before the court is Defendant Sportsman's Warehouse, Inc.'s ("Sportsman") "Motion for Entry of Judgment on Plaintiffs' Fraudulent Transfer Claims under RCW 19.40.081(b)." (Mot. (Dkt. # 188).) The court has considered the motion, all submissions filed in support of and opposition to the motion, the balance of the record, and the applicable law. Being fully advised, and deeming oral argument unnecessary, the court DENIES Sportsman's motion for entry of judgment.

## II. BACKGROUND

This case arises out of Defendant Wholesale Sports USA, Inc.'s ("Wholesale") failure to make rental payments for two large commercial spaces it leased from Plaintiffs Lacey Marketplace Associates II, LLC ("Lacey") and Burlington Retail, LLC ("Burlington"). In the aftermath of Wholesale's breach, Plaintiffs brought fraudulent transfer claims against Defendants United Farmers of Alberta Co-Op Limited ("UFA"), Alamo Group, LLC ("Alamo"), Donald Gaube ("Mr. Gaube"), and Sportsman.[1] (*See* Pretrial Order (Dkt. # 178).) Plaintiffs' fraudulent transfer claims arise from a series of transactions in which Defendants engaged pursuant to their Master Transaction Agreement ("MTA"). (*See* MTA (Dkt. # 118-1); Tr. Ex. 1.)

Under this agreement, Wholesale sold all of its assets to Sportsman. (*See id.* ¶¶ 2.1, 2.2.) Sportsman paid $47 million for the assets. (*See* 3/4/15 Tr. Trans. (Dkt. # 225) at 24:3-14.) The parties dispute whether Sportsman initially paid the purchase

---

[1] Plaintiffs also brought other claims, which are not relevant to this motion.

price to Wholesale or to Wholesale's parent, UFA.[2]  Regardless, the purchase price was ultimately applied to UFA's benefit:  approximately $31 million was used to satisfy Wholesale's debt to UFA, and $16 million was used to satisfy UFA's own debt.  (3/4/15 Tr. Trans. at 95:4-96:14; 142:19-24; 3/6/15 Tr. Trans. (Dkt. # 227) at 26:2-12.)

After the asset sale, UFA gave Wholesale's shares to Alamo for either $1.00 or $0.00.[3]  After some last-minute negotiations, Alamo was paid approximately $1.8 million to accept Wholesale's shares.  (3/4/15 Tr. Trans. at 76:3-78:8-20.)  Of that payment, Sportsman contributed roughly $600,000.00 and either UFA or Wholesale contributed about $1.2 million.  (*Id.*)

A jury trial was held on Plaintiffs' claims.  (*See* Dkt. ## 223-227 (trial transcripts).)  After hearing the evidence described above, the court instructed the jury as to the circumstances in which a transfer by Wholesale to a third party would be found intentionally or constructively fraudulent.  (Jury Inst. (Dkt. # 183) Nos. 28-36).  The court further instructed the jury that, if the jury found Wholesale had fraudulently transferred an asset, Plaintiffs "may recover judgment against the first transferee of the asset or the person for whose benefit the transfer was made."  (Jury Inst. No. 37.)

---

[2] Under the written terms of the MTA, Sportsman was to pay Wholesale, who would immediately transfer the money to UFA.  (*See* MTA ¶¶ 2.1, 2.2.)  At trial, however, the parties put forth conflicting evidence as to whether the account to which the money was transferred was controlled by Wholesale or UFA.  (*See* 3/4/15 Tr. Trans. at 88:8-20 (UFA Chief Executive Officer testifying that the account was a Wholesale account)); 3/6/15 at 24:3-23, 29:25-30:21 (UFA's director of finance testifying that the account was a Wholesale account); Tr. Exs. A-239, A-240; *but see* Tr. Ex. 5 (funds flow chart showing the account was titled "United Farmers of Alberta Co-Operative Limited"); 3/6/15 Tr. Trans. at 36:19-37:18 (deposition testimony by UFA's Chief Executive Officer stating that "the funds didn't go through Wholesale Sports US.  Those funds went to UFA . . . .")).

[3] The MTA provided for a $1.00 purchase price (MTA ¶ 2.2), but there is no documentation that the $1.00 was ever paid (3/6/15 Tr. Trans. at 40:3-9).

The jury returned a verdict for Plaintiffs on all fraudulent transfer claims against all Defendants. (*See* Verdict (Dkt. # 187).) The jury awarded Plaintiffs their requested monetary damages: $5,218,493.35 to Lacey and $6,668,255.94 to Burlington. (*Id.*) Sportsman now moves the court to direct entry of judgment on the fraudulent transfer claims against UFA only, but not against the other three Defendants. (*See* Mot.)

### III.   ANALYSIS

In general, Federal Rule of Civil Procedure 58 provides that "[e]very judgment . . . must be set out in a separate document." Fed. R. Civ. P. 58(a). Accordingly, after a jury returns a verdict, a party may request the court to direct entry of a final judgment on the jury's verdict. Fed. R. Civ. P. 58(d). Here, however, Sportsman relies on Rule 58 to request that the court disregard the jury's verdict and instead enter a judgment on the fraudulent transfer claims against UFA only. (*See* Mot.) For the reasons set forth below, the court denies Sportsman's motion.

**A.   Sportsman's position**

Washington's Uniform Fraudulent Transfer Act ("WUFTA") provides that if a debtor is found to have fraudulently transferred an asset, the debtor's creditor may void the transfer or recover a monetary judgment in the amount the debtor owed the creditor. RCW 19.40.071; RCW 19.40.081(b). Pursuant to WUFTA, such a "judgment may be entered against: (1) The first transferee of the asset or the person for whose benefit the transfer was made . . . ." RCW 19.40.081(b). In general, "the principles of law and equity . . . supplement [WUFTA's] provisions." RCW 19.40.902.

Relying on that statutory language, Sportsman arrives at the conclusion that a court "has discretion to enter judgment on a fraudulent transfer claim against the transferee of the debtor's asset, or against the beneficiary of the transfer, but not [against] both." (Mot. at 7.) Specifically, Sportsman contends that the word "may" in RCW 19.40.081(b) means that the court has discretion to decline to enter judgment against an entity that is otherwise liable. (*Id.* at 6.) Sportsman further contends that the word "or" means that the court can only enter judgment against one, but not multiple entities for a given fraudulent transfer. (*Id.* at 7.) Sportsman concludes that a court should exercise this discretion guided by unspecified "principles of law and equity." (*Id.*)

Accordingly, Sportsman argues that the court is permitted to enter judgment against either UFA or Sportsman, but not both, and that the principles of equity favor entering judgment against UFA rather than Sportsman.[4] The court disagrees.

**B.  Multiple party liability**

Sportsman's contention that a court cannot find two parties liable for a given fraudulent transfer is not supported by caselaw.[5] Because it does not appear that the Washington Supreme Court has addressed the issue, the court looks to existing state law to predict how the Washington Supreme Court would resolve the question. *See Ticknor*

---

[4] Although Sportsman moves for the court to enter judgment only against UFA, Sportsman fails to discuss why the court should disregard the jury's findings that Alamo and Mr. Gaube were also liable on the fraudulent transfer claims. (*See* Mot.; Reply (Dkt. #213).) Because Sportsman does not address Alamo's or Mr. Gaube's liability, neither does the court.

[5] The court notes that Sportsman's argument is also flawed because it assumes, but fails to demonstrate, that the jury could have found UFA and Sportsman liable only for the same fraudulent transfer by Wholesale, rather than on separate transfers. *See infra* Section III.C.

*v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). Sportsman provides no Washington State precedent in which a court held or otherwise stated that only one party can be liable for a given fraudulent transfer. (*See* Mot.; Reply.) In fact, contrary to Sportsman's position, the Washington Court of Appeals has found it is proper to enter judgment against both the first transferee and the person for whose benefit the fraudulent transfer was made. *See Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 934 P.2d 715, 720 (Wash. Ct. App. 1997), *as amended on reconsideration* (Aug. 5, 1997) ("Here, it is undisputed that CGI and CSL were first transferees. Further, as the sole shareholder of both CSL and CGI, David Christensen is the person who ultimately benefited from the disputed transfers. If the UFTA applies to any of the disputed transactions, entering judgment against CGI or CSL as first transferees, and against David Christensen as a person benefited, was proper under RCW 19.40.081(b).").

Moreover, courts in other jurisdictions interpreting an almost identical fraudulent transfer provision in the Bankruptcy Code[6] have consistently found that the initial transferee and person for whose benefit the transfer was made are both liable for a money judgment. *See, e.g.*, *In re Bullion Reserve of N. Am.*, 922 F.2d 544, 546-47 (9th Cir. 1991) ("[T]he trustee can recover from both the initial transferee and any secondary transferee, as well as from any entity for whose benefit the initial transfer was made."); *In re Ogden*, 314 F.3d 1190, 1202 (10th Cir. 2002) ("As we have noted, section 550 makes

---

[6] Specifically, 11 U.S.C. § 550 provides that, in the event of an avoidable transfer, "the trustee may recover . . . the property transferred, or, if the court so orders, the value of such property, from, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made."

both the initial transferee of a preferential transfer and 'the entity for whose benefit the [preferential] transfer was made' strictly liable to the bankruptcy estate for the value of the preferential transfer.").[7]  Although a creditor is only entitled to a single satisfaction, he or she is entitled to choose from which entity to recover.  *In re Eleva, Inc.*, 302 B.R. 112 (B.A.P. 10th Cir. 2003) (collecting cases); *see also In re Sufolla, Inc.*, 2 F.3d 977, 980 (9th Cir. 1993); *In re H & S Transp. Co., Inc.*, 939 F.2d 355, 358 (6th Cir. 1991); *In re Circuit Alliance, Inc.*, 228 B.R. 225, 236 (Bankr. D. Minn. 1998).  Sportsman has provided no authority from other jurisdictions to the contrary.  (*See* Mot.)

The WUFTA provision on which Sportsman relies was adopted from the Uniform Fraudulent Transfer Act, which in turn  "derived [that provision] from § 550(a) of the Bankruptcy Code." Unif. Fraud. Trans. Act § 8 (comment (2)).  Because an "explicit purpose" of the Uniform Fraudulent Transfer Act is uniformity among adopting jurisdictions, Washington courts are guided by the interpretations of courts in other jurisdictions applying the Uniform Fraudulent Transfer Act and, when applicable, the underlying Bankruptcy Code.  *Thompson v. Hanson*, 174 P.3d 120, 126 (2007) (Wash. Ct. App. 2009) (looking to First Circuit and Colorado State law to interpret WUFTA terms); *see also Kreidler v. Cascade Nat'l Ins. Co.*, 321 P.3d 281, 288 (Wash. Ct. App. 2014) (interpreting the WUFTA phrase "reasonably equivalent value" and finding

---

[7] *See also Qwest Commc'ns Corp. v. Weisz*, 278 F. Supp. 2d 1188, 1192 (S.D. Cal. 2003); *In re Dominion Corp.*, 199 B.R. 410, 412-13 (B.A.P. 9th Cir. 1996); *In re Julien Co.*, 136 B.R. 760, 765 (Bankr. W.D. Tenn. 1991); *Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Defense Network)*, 332 B.R. 896, 915-16 (Bankr. D. Nev. 2005).

ORDER- 7

Not applicable

bar

"because the provisions in which this phrase appear mirror the fraudulent transfer provision of the Bankruptcy Code, decisions under the Code are instructive").

Accordingly, the court concludes that the Washington Supreme Court would, consistent with the weight of authority interpreting similar fraudulent transfer provisions, find that multiple entities may be held liable on a fraudulent transfer claim under RCW 19.40.081(b). Therefore, the court is not required to enter judgment only against Sportsman or UFA.

**C.     Court's discretion**

Sportsman maintains that, even if the court is not required to do so, the court has discretion to enter judgment against UFA only, notwithstanding the jury verdict finding Sportsman liable. (*See* Reply at 6.) However, the only Washington case Sportsman cites in its favor is non-precedential, and involved a bench trial rather than a jury verdict.[8] *See Meridian Place, LLC v. Haughney*, 176 Wash. App. 1006 (Wash. Ct. App. 2013). UFA, however, protests that it has a right to a jury trial on the fraudulent transfer claim, and a so-called "equitable" decision by the court absolving Sportsman of liability after the jury delivered a contrary verdict would violate that right. (UFA Resp. (Dkt. # 203)); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 49 (1989) (finding that a fraudulent transfer claim that sought money damages "should be characterized as legal rather than as

---

[8] Sportsman's remaining supporting case is also distinguishable: it stands for the unremarkable position that a money judgment may not be entered against the transferring debtor as a "person for whose benefit the transfer was made" because doing so would result in double liability for the debtor. *See Renda v. Nevarez*, 167 Cal. Rptr. 3d 874, 876-77 (Cal. Ct. App. 2014); *see also In re Coggin*, 30 F.3d 1443, 1454 (11th Cir. 1994) *abrogated on unrelated grounds by Kontrick v. Ryan*, 540 U.S. 443 (2004) ("[T]here is no cause of action created by section 550(a)(1) in a trustee to recover the value of an avoidable conveyance from a transferring debtor.").

1 equitable," and therefore merited a jury trial pursuant to the Seventh Amendment); *Simler v. Conner*, 372 U.S. 221, 222 (1963) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions.").

The court declines to decide whether it may permissibly exercise its discretion to enter judgment contrary to the jury's verdict under RCW 19.40.081(b). Even if the court were permitted to do so, the court would decline to exercise its discretion in that fashion for two reasons.

First, Sportsman contends that "equity and common sense" require the court to absolve Sportsman of liability. (Mot. at 7.) The only equitable consideration that Sportsman advances is that Sportsman did not receive a windfall from its purchase of the assets: Sportsman actually paid $47 million for the assets it received. (*Id.* at 7-8.) But unlike the situation in *Meridian*, Sportsman does not contend that it affirmatively lost money on various parties' transactions. *See Meridian Place*, 176 Wash. App. 1006 at *7 (finding that the purported beneficiary in fact lost $114,000 in the transaction). Moreover, Sportsman, as a party to and participant in the MTA, was on notice that a significant portion of the money it paid was destined to enrich UFA rather than compensate Wholesale. (*See* MTA ¶ 2.1 (sale of Wholesale's assets to Sportsman), ¶ 2.2(a) ("immediate" transfer of asset purchase price to UFA).) On the whole, the court is unconvinced that equity weighs so heavily in Sportsman's favor as to justify the drastic step of overruling the jury's verdict.

Second, the majority of Sportsman's arguments improperly go to the merits of the

ORDER- 9

claims rather than to equitable principles. (*See* Mot.) Specifically, Sportsman assumes that the account to which Sportsman transferred the asset purchase price for belonged to Wholesale, rather than UFA. (*See id.*) Sportsman's motion is based on the conclusion that the asset transfer was not fraudulent because Wholesale received reasonably equivalent value.[9] However, at trial, evidence was presented on both sides of the issue: some evidence showed the account belonged to Wholesale, other evidence suggested it belonged to UFA. (*See, e.g.*, 3/4/15 Tr. Trans. at 88:8-20); 3/6/15 Tr. Trans. at 24:3-23, 29:25-30:21, 36:19-37:18; Tr. Exs. 5, A-239, A-240.) The fact was disputed at trial, and on this motion Sportsman may not simply assume it was resolved one way or the other. To the extent Sportsman believes the evidence that the account belonged to UFA is insufficient to support a jury finding to that effect, that contention must be raised and proved under the standard for judgment as a matter of law. *See* Fed. R. Civ. P. 50(a); *Ostad v. Or. Health Sci. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003) (stating that judgment as a matter of law is permitted only where a reasonable jury would not have had a legally sufficient evidentiary basis for the challenged finding).

Nonetheless, operating from that favorable but un-established factual premise, Sportsman contends that the court should not enter judgment against it because (1) the jury could not appropriately find that Wholesale's transfer of its assets to Sportsman was intentionally fraudulent, (2) the jury could not appropriately find that Sportsman was

---

[9] The court notes that receipt of reasonably equivalent value is dispositive of constructive fraudulent transfer claims, but not intentional fraudulent transfer claims. (*See* Jury Inst. Nos. 31-34); RCW 19.40.041(a); RCW 19.40.05.

ORDER- 10


liable for Wholesale's transfer of the purchase price to UFA's lenders as "the person for whose benefit the transfer was made," and (3) Plaintiffs' counsel made improper and legally incorrect remarks during closing arguments. (*See* Mot.; Reply.) Sportsman, however, puts forth no authority showing that a court can enter judgment under RCW 19.40.081(b) after a jury verdict based solely on the court's view of the merits of the claim. At this stage in the proceedings, Sportsman's arguments regarding the merits are properly raised only in a motion for judgment as a matter of law under Rule 50 or for a new trial under Rule 59. *See* Fed. R. Civ. P. 50(b), 59(a). Unless Sportsman meets the standards set forth in Rule 50 or Rule 59, the court cannot enter judgment contrary to the jury's verdict on the basis of alleged jury or legal error. *See Ostad*, 327 F.3d at 881; *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (stating that a new trial is required when the jury's finding is against the "clear weight of the evidence").

At bottom, Sportsman's motion is based less on equitable principles operable after a finding of liability than on Sportsman's belief that the jury should not have found it liable in the first place. The court rejects Sportsman's attempt to short circuit the process established by the Federal Rules of Civil Procedure for challenging a jury's verdict. Therefore, the court denies Sportsman's motion to direct entry of judgment. The denial is without prejudice to timely raising the arguments contained therein in a procedurally proper motion.

//

//

//

### IV. CONCLUSION

For the foregoing reasons, the court DENIES Sportsman's motion (Dkt. # 188).

Dated this 21st day of May, 2015.

JAMES L. ROBART
United States District Judge

ORDER- 12